Good morning. We have three cases on the argument docket for today. I expect we'll take two of the cases and take a brief break before hearing the third. First one of the case today, 9000 Airport v. Comptroller Glenn Hegar. Mr. Mendelson. Thank you, and may it please the Court. The Bucks Wilds Strip Clubs already lost this case in Combs. Race judicata prevents them from evading the preclusive effect of that state court judgment. But even if race judicata didn't apply, for many of the reasons explained in the Combs case, as well as this Court's decisions in Dovey, Landry, and Club Executives, the sexually oriented business fee passes the secondary effects test. The District Court stated that the Comptroller did not mention race judicata in the motion to dismiss. Is that not an argument that's waived? The issue was adjudicated by the District Court. It was passed upon by the District Court. And so for that reason, it is not forfeited. We're addressing a holding of the District Court. I also want to be sure to point out Was it raised, was it to respond to, recognized by the District Court or how did it come up? It came up only after Mr. Curtis Wise's testimony at the preliminary injunction hearing where he stated for the first time that 9000 Airport was part of the Bucks Wilds chain of strip clubs. And that's what alerted us to the race judicata argument. There was nothing in any of the pleadings that gave rise to that argument prior to the preliminary injunction hearing. But nonetheless, it was adjudicated by the District Court. It was passed on below. In that adjudication, I think the District Court stated that 9000 Airport was not a member of the Texas entertainment industry. Is that incorrect? That's correct, Your Honor. The District Court did say that 9000 Airport is not a member of the Texas Entertainment Association, which was the organization that of course adjudicated the Combs case, that brought the Combs case. But the test under Texas law, and this is the Olmstead case and this court's Three Star Properties case, is that privity exists if the parties share an identity of interest in the basic legal right that's the subject of the litigation. And this court interpreting Texas law, and this is on page 606 of Three for privity, but the courts look to the totality of the circumstances of each case. And here, what the totality of the circumstances show is that all of the other Buckswild strip clubs are members of the TEA, that both co-owners of 9000 Airport own other strip clubs. Now, I wonder about that because it's an LLC, and LLCs are not treated the same as corporations in our world. So for example, on diversity, a corporation, it's a matter of where the corporation is and all of that. But in an LLC, you have to look at the owners and what their citizenship is. So what I'm wondering is if that really does put 9000 Airport LLC in with its owners, who one of them is actually in it, in that TEA, and the other one has ownership of some who were. That's right, Your Honor. Of course, LLCs are generally referred to as pass-through entities, and under a totality of the circumstances test, that may very well be something that the court ought to consider. Does it matter that 9000 Airport wasn't even in existence when the Combs case was issued? I don't think so, and I think maybe a hypothetical that might be useful to the court is this, and that is that in the fast food world, most McDonald's restaurants aren't owned by the McDonald's Corporation. They're owned by individual franchisees. And so if a fast food trade association, for example, might bring a lawsuit on behalf of 1000 McDonald's franchisees, that a new McDonald's franchise was founded after that hypothetical litigation, might have concluded, I would think that under Texas law, that new franchisee, because it's just a carbon copy of the same business, would be barred by res judicata. But nonetheless, even if the Combs decision isn't preclusive, it's certainly very persuasive authority at best, and certainly the motions panel recognized that Combs seemed to be very persuasive to the motions panel, and I think Combs recognized something really important, and that is that the statutory text shows, and this is under Dovey, Landry, and Club Executives, what the statute's purpose is, and that is that it doesn't apply at all if there's no alcohol consumption. It applies only if you combine nude dancing with alcohol consumption. Otherwise, it doesn't apply at all. And can you tell us about that interchange between alcohol and nudity and how that does cause problems? Sure. So there's several things, and I guess this isn't going very much farther than what this court held in the Dovey-Landry case, where the court said that nude dancing and alcohol are, quote, a combustible mix. And that's nothing that the CDC and one of the sub-agencies of NIH in their studies talked about. In fact, the CDC said that one of the ways to lower sexual violence is to raise the prices of alcohol, and that's really not anything much farther than what cases like Dovey-Landry and Combs have already said. What evidence is in the trial record, district court record, to support the legitimacy, reasonableness of the court? Well, I think there's a few things. Or is it only matters that you're seeking us to take judicial notice of on appeal? Sure. Well, other than the stuff, excuse me, other than the things about judicial notice, Your Honor, I think I would point the court, and this is at record 349 and 350, and this is Kevin Richardson's declaration, where he talks, Kevin Richardson is one of the co-owners of 9000 Airport, and he talks about rules that TEA members have. And one of the things he says is that the TEA members have very strict rules about things like underage drinking and being sure that they know where the dancers are at all times. And he also says that he understood that recently, one of the managers at one of his strip clubs mentioned that a young woman had very unfortunately been, quote, victimized by a pimp. That's at record 350. And I think the implication of that declaration is that unfortunately, the TEA knows that sexual violence does sometimes happen in their strip clubs, and that the reason why they have to have these strict rules is because they know that some combination of alcohol and nude dancing can unfortunately lead to that. Otherwise, they wouldn't have testimony about how they have very strict rules about underage drinking, because they know that that exacerbates, unfortunately, the problem. So I think that declaration, along with what the CDC has said, as well as this Court's opinion and the Combs decision, show that evidence. And I think it's also important to remember that, and this is in Club Executives and Dovey Landry, that the state's burden is just to show evidence that it reasonably believed to be relevant. In fact, Justice Kennedy's concurrence in the Alameda book says that all the state really needs to show is one study and what he calls common experience. In other words, that states should have latitude to experiment with different ways to solve the problems of the secondary effects that exist, unfortunately, in institutions like the Bucks Wild Chain of Strip Clubs. And this rule isn't preventing nude dancing? No. No, it's not, Your Honor. First of all, anyone can easily avoid this fee if they just don't permit alcohol. And I think it's also worth pointing out that 9000 Airport doesn't make money off of alcohol consumption. It's not really part of the business in the sense that they don't make money on it. They're a BYOB establishment. And so for that reason, they certainly do have many avenues of communication to express the First Amendment-protected activity, as the Supreme Court has explained. So is the only money being made at these clubs, publicly identified anyway, is the admission fee? So what 9000 Airport says is they've, the record, and this is Curtis Wise's testimony at the preliminary injunction hearing, is that he talks about how they do have a food menu. So they do have, he actually says that they serve steak and lobster, and they have valet parking, and they have an admission fee. So I think it's a combination of admission and food service, based on Mr. Wise's testimony. And then don't they tip the dancers, as well? Yes, they... That is meaningful to what they have to pay the dancers? So my understanding, and this is also from Curtis Wise's testimony, is that the dancers are independent contracts, independent contractors, as opposed to employees. I think they mentioned that they have 142 contractors and 44 full-time employees. Right, but they still pay them something, but in some cases, not at all. They just say you've got to get tips. I'm not quite sure what the record reflects as to that. That may not be in the record, but my understanding is they do tip the dancers in some way. That's a huge part of what the dancers get and why they do it. I believe... I did a lot of these situations as a state district judge. I had a lot of temporary injunction requests involving this kind of thing. So that's how I have happened to know that. That was years ago, so maybe things have changed, but... I certainly believe that that's correct. And I think that's also a good reason to address the Euston-Generis argument in the overbreadth claim, and that is that the statute isn't overbroad because it only applies to bars, restaurants, nightclubs, and what it calls similar commercial enterprises. And what Your Honor, Judge Haynes was referencing is, in our view, one of the reasons why the term similar commercial enterprise isn't nearly as broad as the hypotheticals that my friend on the other side lists in his brief. And that is that bars, restaurants, and nightclubs, as opposed to a concert at a football stadium or a gymnastics or a figure skating competition, they do, the bars, restaurants, and nightclubs, make it easier, unfortunately, to touch performers and incentivize that tipping that Your Honor was referencing, because that is a way that they generate money. And also, those environments, as opposed to the hypotheticals in 9000 Airport's brief, facilitate, unfortunately, one-on-one personal interactions with performers that one wouldn't find at a concert at a football stadium, like the Dallas Cowboys Stadium, for instance. Is the purpose of the SOBF only to raise revenue for sexual assault funds? No, Your Honor. The purpose of the SOBF, as shown in its statutory text, is to give a court held that focus on the legislature's pre-enactment rationale is misplaced, because all that is relevant under Fantasy Ranch is the existence of a current governmental interest, and that can even be, under Fantasy Ranch, evidence that was adduced, quote, adduced for the first time at trial. But they do use the money towards the sexual problems. Yes, it is. That is important. Yeah, it is certainly true. Or try to save somebody who's being assaulted and that kind of thing. It is certainly true that the money from the sexually oriented business fee goes to the credit of the state's sexual assault prevention fund. That's certainly true. But the statutory text really shows that it's trying to prevent the combination of alcohol and nude dancing. Better to prevent it than to have to deal with it. That's absolutely correct, Your Honor. And the other thing I want to be sure to point out about the overbreadth claim is, and this is what this Court said in Hirsch and what the Supreme Court said in Hansen, is that it's not enough to be able to simply point to hypothetical applications of a law. It's the plaintiff's burden to point to realistic applications of the law, realistic, not fanciful. And that's on page 770 of the Hansen case. And in fact, the Hansen case says, in fact chides the plaintiff in the Hansen case for saying that the plaintiff couldn't identify a single prosecution for ostensibly protected expression in all of the time that that statute, that federal statute, had been on the books. And that's exactly the situation here, which is the 9000 Airports Brief talks about a lot of fanciful hypotheticals, but it can't point to a single instance in which any of those hypotheticals have actually come to pass. And I see I only have a couple minutes left, so I do want to be sure to address the Fourth Amendment claim as well. And 9000 Airports' Fourth Amendment argument vis-a-vis standing is the exact same argument that California v. Texas and this Court in A&R Engineering rejected. And that was the argument that because they believe statutory language applies to them, that they must have a credible threat of enforcement. But that's just not true. And California v. Texas expressly rejected that argument. And what this Court in A&R Engineering said was that the plaintiff has to assert an injury that's the result of a statute's actual or threatened enforcement, and that, quote, mere potential is not enough under A&R Engineering. And I guess I want to — I see I only have about one minute left, so I do want to very briefly address the Fourth Amendment claim, and that is that 9000 Airports' argument on the merits is that there are three applications of this statute, but they offer effectively no argument as to why one of those three applications would, in their view, be unconstitutional. And what I'm referencing is Section 111.0043 of the tax code, which is the subpoena procedure, that matches Patel exactly. And because this is a facial challenge, this Court held in the city of El Cenizo v. Texas that Patel did not alter the standard for facial challenges, that one must show that it is — the statute is unconstitutional in all applications. So that there may be three applications and that they've offered effectively no argument as to one of them is the end of their facial challenge. Does that also align with the Supreme Court's recent decision in Moody v. Net Choice? So the Net Choice case, of course, was a First Amendment overbreadth claim. And what this Court held — and the Supreme Court has always treated the overbreadth doctrine as sort of an exception to the all-applications rule. In other words, it isn't true in First Amendment — and I see my time has expired. May I answer the question? Yes, you may. The Supreme Court has held that the First Amendment has an overbreadth doctrine, and that analysis is different from other types of, shall we say, 1983 constitutional arguments, in the sense that the overbreadth burden is that one must show that a statute is overbroad vis-a-vis the statute's plainly legitimate sweep. But that's — the First Amendment is the only context in which that exists. In all other contexts, one must show facially that the statute is unconstitutional in all applications. And I see my time has expired. All right, Counselor. May it please the Court, my name is Michael Murray, and I do represent the Plaintiff Applee 9000 Airport, LLC, a Texas limited liability company that was formed only two years ago, and which opened its adult cabaret only one year ago, on September 13th, 2023, some 12 years after the Combs decision by the Texas Supreme Court, and just two weeks after House Bill 3345, which doubled the sexually oriented business fee to $10 per customer entry, just two weeks after that new law went into effect. Do any of your arguments turn on the fact that it's $5 more? Sure. Well, first of all, the testimony from Mr. Wise was that when they contemplated this new entity and this new club, they understood the $5 fee, and that was going to be tough. But when they raised it to $10, his testimony is it's going to be very difficult to survive at $10. It's a lot of money when you multiply it by every single person that enters the club, so yes. And the other thing, Your Honor, is that in a case in which you have a content-based fee on constitutionally protected expression, the amount really doesn't matter. Which brings me back to my point, why does it matter it's $10 or $5? I don't see how your argument is affected. It matters in the sense that it's a new law, first of all, so that defeats any res judicata claim for the Combs decision, because this is a new bill that is being challenged. This club wasn't in existence. I think the change would have to affect, in some way, the constitutional issues that have been resolved already. And that's why I asked about what the difference can be. Well, Your Honor, but the constitutional issues that were resolved by Combs Your position seems to be that if there's any change at all in the law, res judicata is out the door. And all I'm challenging you on that, to see what your response is, aren't some changes irrelevant to the res judicata issue? Well, I think in Students for Fair Admissions, Inc. v. University of Texas, which I think demonstrates that res judicata wouldn't apply here, there was a change in the law, plus the fact that the parties were different, even though the individuals who had sued previously were members of the board of directors of the non-profit that was the new plaintiff. And a change in the law does matter in terms of res judicata, but more importantly, Your Honor, in terms of res judicata, Judge Hoyt got it right. He didn't make any factual findings that were clearly erroneous on the issue of res judicata, and he didn't make an error of law on that subject. Okay, but what about my LLC question that I asked your opponent? Why doesn't that affect you all? Because that's different from a corporation in terms of analyzing it. You look to the owners, and the owners are, and one of them is in TEA, and the other one owns entities that are. Well, first of all, neither the members of 9000 Airport are individually members. They are owners of other corporate entities that are members. Mr. Richardson is part of TEA as a result of being a member of other corporations that are members. The membership that is at issue here are corporate entities, other LLCs, and Kevin Richardson and Mr. Wise are members. Yeah, but if it's an LLC, then they're the owner, then they are a member. But Your Honor, even an LLC is a separate legal entity. It's not the same as the individuals. It doesn't, you don't pierce the corporate veil. For example, if the LLC incurs a debt in a contract, you can't sue the individual members just because it's a pass-through entity. It's still a separate legal entity, and in fact, I might add that the Combs decision was argued in March of 2010. It was argued. According to Mr. Wise, the first nightclub that he opened through an LLC was opened in October of 2010, which was many, many months after even the Combs decision was argued. Now, it was decided in 2011, but it's a separate legal entity. It's not a member of TEA, and it is entitled to challenge a new law, particularly when it just opened in September of 2023. So I don't, and we cited a number of cases in our brief, and we can go through those, but we would recommend our brief. We think we've adequately covered why res judicata under your decisions, the Fifth Circuit decisions, many of them that we cited, including Your Honor's opinion, Judge Southwook, in the Amarillo case that was not too long ago. So we don't think that there's any possibility under the law that a non-member of the TEA, a new corporate entity that opens a brand new business 12 years after the Combs decision can be bound by the Combs decision. And so it seems to me Judge Hoyt was properly dealing with the merits, and what we have is a content-based fee, and the Supreme Court, in the four major cases that we've cited in our brief over decades, has held that a content-based fee on expression is presumptively unconstitutional under the First Amendment and must satisfy strict scrutiny. And those four cases, we have them in the brief, the Minnesota Star case, the Forsyth case, the Simon & Schuster case, and the Arkansas Writers case. They all stand for that proposition. And this clearly on its face is a content-based statute. It only applies to businesses that present constitutionally protected expression that includes some level of nudity, which is broadly defined as any portion of the buttocks or any portion of the lower breast being exposed in the course of a performance that is live and presented to an audience. The only way the statute is triggered is by the content of that expression. If you have other content, if you have shows, singing, dancing performances, musicals, whatever, if you have those... Well, what's your response to his agreement that the tipping and the kind of more personal interaction that occurs in these nude dancings that are right in front of you instead of you're sitting there watching the Cowboys play or something, why isn't that a difference? Well, first of all, this statute is overbroad three ways, three times. And let me directly address that question. First of all, the definition isn't limited to topless or nude entertainment clubs. It includes nightclubs, bars, restaurants, similar commercial enterprises, which the comptroller admits in his briefs includes saloons, pubs, taverns, and speakeasies. But all of those are places where you can more interact personally than you can at, say, a football game. Well, that's true. But nightclubs and bars and restaurants are not dens of iniquity. And they have performances, singing performances, dancing performances, comedy routines, all kinds of performances that are presented in those venues that have nothing to do with topless dancing and nude dancing in adult nightclubs. And so that's the first way that it's overbroad. The second way it's overbroad is that the comptroller in his website says that even if you have one performance, all these mainstream venues, any restaurant, any comedy club, any pub, any bar, any nightclub, forget about adult nightclubs, just look at all the mainstream venues in the entire state. The comptroller says that if you present even one performance that has any nudity in it, you're a sexually oriented business and you have to pay the fee. Now, how could that possibly be justified on a secondary effects basis, all these mainstream venues? All right. So if, how would you rewrite it to make it focus just on the 9,000 airport entity, which is not what you're talking about, the overbroad ones? Well, if by limiting it to adult nightclubs defined as clubs that present nude and topless dancing on a regular permanent basis, that's the classic definition for a secondary effects situation. And we cited the cases in our brief, Your Honor. Look at the Conchata case out of the third circuit. They struck down a liquor regulation that prohibited lewd entertainment, which was defined and enforced to include sexual conduct and nudity. And Conchata said that's absolutely overbroad because it applied to mainstream businesses as well. Giovanni Carandola in the fourth circuit struck down a similar prohibition on nudity and sexually explicit behavior in liquor permit premises. And in neither one of those cases did they say, well, it's okay because you could just up your liquor license and you could present your mainstream artistic nude presentations, which is what the comptroller argues here. You shouldn't. So they struck those statutes down. The seventh circuit in the Schultz case said that an ordinance that regulated nudity and sexual conduct in sexual oriented businesses was defined too broadly because it only required that regularly those performances be shown. And they said that would bring in high art and other mainstream performances. And so the only way they could save it was by saying that you have to always present nudity and sexual activity in order to uphold that law. Triplet Grill in the sixth circuit struck down another ordinance because it wasn't limited to topless and nude dancing establishments. And by the way, we're not conceding that there is any evidence that was offered in this record that actually makes the link between the kind of entertainment that is presented at this plaintiff's club and the adverse secondary effects that they're talking about. There's no evidence. And under your decision in allusions, that's fatal at this juncture to the statutory scheme. Just as you decided in TEA versus Hagar because the comptroller didn't introduce evidence in that case. He couldn't rely upon just this notion of common sense or judicial opinions. You got to put on evidence. And Judge Hoyt followed those decisions and said, well, Mr. Hagar didn't put on any evidence. Now, maybe when it gets back for the trial, Mr. Hagar, the comptroller, can begin to put on that evidence and we'll be able to contest it. But at this juncture, the record is barren of any evidence and your decision in the allusions case says that's fatal because they can't rely upon common sense. You can't rely upon judicial opinions. You actually have to have some evidence. Even if you don't have to have a lot of evidence, you have to have some evidence. The comptroller is asserting on appeal that we can take judicial notice of certain documents. What's your response to that? The allusions case, I think, demonstrates that you can't. For example, You can't address judicial notice of study such as the comptroller is arguing here? In the allusions case, the defendant offered the proposition that the judicial opinions I'm not saying judicial opinions, judicial notice of studies. I don't think that they can I don't know if allusions address that or not, but it seems to me unless it did, that's not helpful. J&B Entertainment, which was relied upon by allusions, requires some evidence in the trial court. The case law seems to say you can't embellish the record for the first time on appeal. We haven't been able to challenge that evidence. We don't agree that it satisfies the judicial notice requirement, but more importantly, they need to do this in the trial court when it gets sent back so that we have an opportunity to contest the evidence rather than simply give them the opportunity to put it into the record on appeal when there's nothing in the record in the trial court. So we certainly believe that the injunction should not be vacated on the ground that they're permitted to put in evidence for the first time on appeal, even though we don't concede that any of that evidence actually satisfies the burden, even if it were introduced at the trial court. But at least we'd have a chance to contest it. So in terms of overbreadth, it seems to me that you've got three ways it's overbroad. By applying to mainstream venues throughout the state, including the ones that they admit on their brief, pubs, saloons, restaurants, nightclubs, bars, these are all mainstream venues. That's number one. Number two, the fact that it applies even if you present one performance involving nudity at any of these mainstream venues. No way can that be characterized as secondary effects. And then the third thing is the definition of nudity is so broad that it encompasses mainstream performances that have nothing to do with any alleged secondary effects that are associated with complete nudity. And the case law supports that. And it's therefore facially overbroad, in addition to being defective because it's a content-based fee on expression. And I think Justice Kennedy clinches it because, and this court held last year in Association of Club Executives versus City of Dallas, that Justice Kennedy's concurring opinion in Almeda Books is the controlling opinion. And Justice Kennedy specifically said that a city may not regulate the secondary effects of speech by suppressing the speech itself. A city may not, for example, impose a content-based fee or tax, citing Arkansas Writers, which is one of the leading cases. This is true even if the government purports to justify the fee by reference to secondary effects, citing the Forsyth County case, which is the other one that we cite in our brief. And so you can't use secondary effects under this controlling opinion to justify a content-based fee on expression. Even Justice O'Connor, in the plurality opinion, makes the same distinction. She points out that under Renton, it was a time, place, and manner regulation involving a zoning ordinance, basically. And she also says that then you have to decide, is it content-based or is it content-neutral? And she says a content-based scheme is presumptively unconstitutional, and she cites Simon & Schuster and Arkansas Writers, the two leading cases of the four that the Supreme Court has decided over the course of decades, establishing that a content-based fee is presumptively unconstitutional under the First Amendment. And what's noteworthy is that Justice O'Connor is also the author of the Simon & Schuster opinion. So when she cites Simon & Schuster, she obviously knows what she's talking about. And when she distinguishes Simon & Schuster and Arkansas Writers, which were taxes imposed upon newspapers or expression, and she cites those cases as the ones that establish a content-based situation as distinguished from a time, place, or manner regulation of Renton, she is in accord with Justice Kennedy that you cannot justify a content-based fee on the basis of an alleged secondary effects. It's not a time, place, and manner regulation, which is the only thing that the Supreme Court has, the only circumstance in which the Supreme Court has decided that the secondary effects doctrine applies. Renton and Almeida Books were both zoning. City of Erie versus Pabst AM was a manner regulation because the dancers had to wear pasties and g-strings. But this is not a time, place, or manner. It doesn't regulate the operation of the business at all. It doesn't impose hours. It doesn't say where you can have your business. And it doesn't deal with the manner in which the constitutionally protected expression is presented. And it doesn't matter, it seems to me, and Judge Hoyt got this right as well. It doesn't matter. It's no answer to say, well, just get rid of alcohol. Conchata didn't say that, Giovanni Carandola didn't say that. You can't attach an unconstitutional condition upon the exercise of a constitutional right. And so it's no answer. The Minneapolis Star case, if I could have one second, I think is a good example. We need more than one second, but go ahead and finish the thought. It'd be interesting to see what would the Supreme Court do with that case today? It was a use tax on print and ink, on paper and ink, used in the publication of a newspaper. I think, and it was struck down because it was content based on expression. If that came back today, I think the comptroller would say, well, a newspaper could just not use ink and paper and get rid of its published, its printed version and just completely go online. The Supreme Court would never buy that. The fact that you could give up your print edition in order to avoid the use tax, well, it's the same thing here. Your one second is up. I do apologize and thank you for indulging me. Thank you, Your Honors. 9000 Airport is making arguments that are foreclosed by this court's opinions. All time, place and manner restrictions, all of them combine a protected activity with a non-protected activity. That's what shouting fire in a crowded theater is. That's also what bringing a megaphone into a university building and making a speech is. Those are time, place and manner restrictions. What's your best example that something like this is a time, place and manner? Your best case for that?  There's several. I think one example would be club executives and another example would be Dovey Landry. Dovey Landry was a case in which this court explained that there was an age restriction for strip clubs that serve alcohol. Club executives was a case that said strip clubs have to operate under certain hours. And the point that I want to be sure to make— Both of those are very much time, place and manner. It seems to me this is a tax. This is a charge for certain kinds of expressive conduct, which the Supreme Court says is covered by the First Amendment, at least on the outer edges. Alameda Books says what it says, and you can probably quote it better than I can, and this tax only applies, this fee only applies if certain kinds of expression is occurring. So why isn't Alameda Books really the answer and not something that says you can have performances only at certain hours or only in certain areas, but that's time, place and manner? I just don't see manner or time or place necessarily in here. What binds this court is its interpretation of Alameda Books in Dovey Landry and in the club executives case. When Alameda Books talked about the phrase content-based fee, a few paragraphs below it, Justice Kennedy explained that the term content-based is a misnomer in the secondary effects doctrine and explained that we use the phrases content-neutral and content-based, but he explains that all of these regulations are content-based in the traditional sense of that term, that they only target adult theaters or adult bookstores, and in that sense they're all content-based. But what Justice Kennedy explains is that even if that is formally a content-based distinction, they are all nonetheless subject to intermediate scrutiny if they pass the secondary effects test. What this court held after Alameda Books, interpreting Alameda Books, was that we look to the purpose of the statute. That's what Dovey Landry said, and what club executives said is it used analogous language. It says we look to see if the statute is designed to combat the secondary effects. Well, and also alcohol has nothing to do with the actual dance. It's not like saying you can only dance to jazz in Louisiana or you can only dance to rock and roll. That would be directly addressing the dance, but alcohol, sitting here drinking some wine while somebody's nude up there, has nothing to do with it. The problem is, of course, it causes harm, but what I'm saying is the actual dancer is not impacted by whether I can drink alcohol or not. That's exactly right. So their dance is not changed, except the problem is the people sitting there might come attack them. But as far as the actual dance, it's not saying you can only dance to classical music or jazz and not to rock and roll. That would be addressing the dance directly. That's exactly right. There is no First Amendment right to consume alcohol. That's exactly right. And I want to be very sure to address what 9000 Airport was saying about the overbreadth  Again, 9000 Airport is listing hypotheticals, not realistic applications of the statute. And the reason why they can't point to a single enforcement of the SOBF is because it would require them to take inconsistent litigation positions. One of the law firms that's representing 9000 Airport now in the TEA2, in the TEA enforcement case, took the position that this statute applies to many of the exact same hypotheticals that they're using now, and said the comptroller only enforces it against strip clubs, not those hypotheticals. The reason why they can't meet the Hansen test is because it would require them to take inconsistent litigation positions from their position in what we call the TEA2, the selective enforcement case that was barred by res judicata. I also want to address the Illusions Dallas point. The Illusions Dallas case is not about judicial notice. It was a case where the court said, well, you can't only use judicial opinions, but maybe you can use judicial opinions with something else. And we think that certainly Kevin Richardson's declaration in the record, along with items on federal agencies, websites, government websites, federal government studies by the CDA, by the CDC, excuse me, provide what Justice Kennedy calls the one study in common experience. And I see my time has expired. So we ask that the court vacate the preliminary injunction. Thank you. One more second. Yes, Your Honor. Of course. Thank you both. Thank you. We'll take this case under advisement.